## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 29 2020, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyron King,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 29, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2770<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Angela D. Davis, Judge<br><br>Trial Court Cause No.<br>49G16-1909-CM-36622 |

**Tavitas, Judge.**

## Case Summary

Tyron King appeals his conviction for domestic battery, a Class A misdemeanor. We affirm.

## Issue

King presents one issue for our review, which we restate as whether the evidence is sufficient to convict King for domestic battery.

## Facts

On September 15, 2019, King was at the home of his girlfriend, Keasha Arnett, in Marion County. The same day, Arnett's daughter, S.F., was at Mattie Ferguson's home. Ferguson is S.F.'s paternal grandmother.

Ferguson and S.F. were in Ferguson's bedroom, and while Ferguson was making the bed, S.F. Facetimed[1] with Arnett. Ferguson heard her name, paused to look at the video screen, and then, ten seconds later, Ferguson witnessed King hit Arnett on the video call. Ferguson was unable to determine whether King hit Arnett with an open or closed fist, but Ferguson was able to see King hit Arnett in a "swipe" motion. Tr. Vol. II p. 11. The video call disconnected, and Ferguson was unable to reach Arnett.

Ferguson attempted to call Arnett's relatives, who live closer to Arnett, to check on her; however, Ferguson was unable to reach the relatives or the relatives

---

[1] In placing a Facetime call, Ferguson was able to see Arnett on a video screen.

were not available to provide assistance. Ferguson made the twenty minute drive to Arnett's home with S.F. Once Ferguson arrived at Arnett's home, she noticed that Arnett had a scratch on her face, which was not present during the Facetime call. Ferguson confronted King about witnessing King hit Arnett, and an argument ensued between Ferguson and King.

[6]     Officer Danielle Ianigro, with the Indianapolis Metropolitan Police Department, was dispatched to Arnett's home. Officer Ianigro noticed a scratch on Arnett's face and observed that Arnett was "[f]rustrated," and spoke quickly. *Id.* at 22. After speaking with Arnett and Ferguson, Officer Ianigro arrested King.

[7]     Detective Robert Lowe interviewed King after his arrest. King reported to Detective Lowe that he and Arnett had been arguing and that King tried to grab the phone from Arnett, which caused the phone to be knocked from Arnett's hand. King told Detective Lowe that, after King grabbed the phone from Arnett, she "ended up with a scratch on her face"; King, however, did not admit to causing the scratch.[2] *Id.* at 29. King also stated to Detective Lowe that he and Arnett had been in a relationship since 2017 and that King stays with Arnett approximately four days a week and visits nearly every day.

---

[2] There was some discussion at trial as to whether the phone or King caused the scratch on Arnett's face. Nonetheless, Detective Lowe was clear that King did not directly admit to scratching Arnett's face.

[8] On October 28, 2019, the State filed an amended information charging King with Count I, domestic battery, a Class A misdemeanor, and Count II, battery resulting in bodily injury, a Class A misdemeanor.[3] The trial court held King's bench trial on October 29, 2019.

[9] Witnesses testified to the foregoing facts. Ferguson testified that she and King did not have a good relationship and that they do not like one another. The State also called Arnett to testify. When testifying during the State's case-in-chief, Arnett agreed that she was at her home with King on September 15, 2019; however, Arnett denied that she Facetimed with anyone that day. Arnett also denied that she and King ever dated; however, she acknowledged that they had a "sexual" relationship previously. *Id.* at 5.

[10] At the close of the presentation of the State's evidence, King moved for a motion to dismiss under Indiana Trial Rule 41(b), which the trial court denied. King, in his case-in-chief, also called Arnett as a witness. While testifying during King's case-in-chief, Arnett denied King hit her on September 15, 2019, and testified that the scratch on her face occurred a day earlier.

[11] King similarly testified that he did not hit Arnett and that Ferguson was trying to find a way to get King into trouble. King testified that he is not in a relationship with Arnett and that he does not stay at Arnett's home. Finally, King testified that he was under the influence of marijuana when he was

---

[3] The initial information was filed September 17, 2019.

interviewed by Detective Lowe and does not recall much of his statement to Detective Lowe.

[12] The trial court found King guilty of Count I, domestic battery, a Class A misdemeanor, and vacated Count II because Count II was "covered by Count I." *Id.* at 54. King was sentenced to 365 days with 361 days suspended. King now appeals his conviction.

## Analysis

[13] King argues the evidence is insufficient to support his conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[14] King was charged and found guilty pursuant to Indiana Code Section 35-42-2-1.3(a)(1), which required the State to prove beyond a reasonable doubt that King "knowingly or intentionally" touched "a family or household member in a rude, insolent, or angry manner." King's specific argument is that the evidence was insufficient to prove he touched Arnett in a rude, insolent, or angry manner because: (1) both King and Arnett testified that King did not hit Arnett; and (2) Ferguson's testimony is incredibly dubious because it directly conflicted with King's and Arnett's testimony.

[15] King's reliance on the incredible dubiosity rule is misplaced. Importantly, Ferguson's testimony was consistent throughout: she claimed she was making the bed, paused to look at the telephone screen when she heard her name, and witnessed King hit Arnett. The incredible dubiosity rule "allows an appellate court to impinge upon the fact-finder's assessment of witness credibility when the testimony at trial was so 'unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone.'" *Carter v. State,* 44 N.E.3d 47, 52 (Ind. Ct. App. 2015) (quoting *Moore v. State,* 27 N.E.3d 749, 751 (Ind. 2015)). "Incredible dubiosity is a difficult standard to meet, requiring ambiguous, inconsistent testimony that 'runs counter to human experience.'" *Id.* (quoting *Edwards v. State,* 753 N.E.2d 618, 622 (Ind. 2001)). In *Moore,* our Supreme Court held that "the appropriate scope of the incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be: 1) a sole testifying witness; 2) testimony that is inherently

contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore,* 27 N.E.3d at 756.

[16] The fact that Ferguson's testimony was inconsistent with King's and Arnett's testimony does not render the incredible dubiosity rule applicable. *See Berry v. State,* 703 N.E.2d 154, 160 (Ind. 1998) (declining to apply the incredible dubiosity rule to defendant's argument that the State's witnesses conflicted with one another, but no one witness contradicted himself or herself). Similarly, Ferguson's dislike for King and her ability to see the telephone screen clearly present a credibility question for the trial court, but these arguments do not warrant application of the incredible dubiosity rule.

[17] Ultimately, Ferguson testified that she witnessed King hit Arnett, and the trial court found Ferguson to be a credible witness. King's argument that Ferguson's testimony is insufficient because it conflicts with King's and Arnett's testimony is simply a request for us to reweigh evidence, which we cannot do. *See Gibson,* 51 N.E.3d at 210. The evidence is sufficient to convict King of domestic battery, a Class A misdemeanor.

## Conclusion

[18] The evidence is sufficient to support King's conviction. We affirm.

[19] Affirmed.

Riley, J., and Mathias, J., concur.